```
IN THE UNITED STATES DISTRICT COURT FOR THE
            EASTERN DISTRICT OF VIRGINIA
                  Alexandria Division
```

VILMA E. MORENO,                  )
                                  )
        Plaintiff,                )
                                  )
v.                                )   1:09cv315 (LMB/TRJ)
                                  )
DHI MORTGAGE COMPANY GP, INC., et )
al,                               )
                                  )
        Defendant.                )

## MEMORANDUM OPINION

Plaintiff Vilma Moreno has sued DHI Mortgage Company GP, Inc. ("DHI") for violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §1691(d)(2), and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(f) and 1681(m), and for fraud.[1] The parties filed cross-motions for Summary Judgment. On October 5, 2009, Moreno's motion was granted on the ECOA and FCRA Counts and DHI's motion was granted on the fraud count. The summary judgment ruling left as the only issue for trial what, if any, damages Moreno should recover. The parties have waived jury trial and oral argument on that issue and submitted it to the Court for resolution on the papers.

### I. Factual Background

On January 8, 2006, Moreno signed a contract to purchase a home on Rainswood Lane in Woodbridge, Virginia (the "Rainswood

---

[1] Defendant D.R. Horton, the parent company of defendant DHI Mortgage, was dismissed from this action on April 9, 2009. Moreno's claim for the return of her $20,000.00 down payment applied only to that defendant.

Lane property") from D.R. Horton, a home construction company. The contract required a deposit of $20,000.00, which Moreno made. The contract also required Moreno to apply for financing from DHI, a mortgage financing company owned by D.R. Horton. On January 11, 2006, Moreno signed a Universal Residential Loan Application, which DHI approved.[2] The contract stipulated that the settlement would occur in September 2006. Moreno maintains that she was ready, willing and able to close on the Rainswood Lane property at that time, but D.R. Horton had not yet completed construction of the home. In January 2007, when the home was still not complete, Moreno demanded that D.R. Horton complete the home, as it was required to do under the contract.

Unable to tender the completed home, D.R. Horton instead offered to sell Moreno a townhouse it was building in a different location (the "townhouse"). Between the time she signed the contract for the Rainswood Lane property and the time D.R. Horton offered her the townhouse, Moreno's financial situation had deteriorated. Moreno advised Cathy Mason, a D.R. Horton sales manager, about her financial problems and the resulting change in

---

[2] This application contained several inaccuracies, including an overstatement of Moreno's income, the incorrect value of another property Moreno owned, and incorrect number of dependants and level of education. Although these inaccuracies were a central issue of debate between the parties at the summary judgment stage, they are less critical to a determination of damages because the Court has found that the defendant violated the ECOA and the FCRA, which are strict liability statutes with statutory damage measures that do not give weight to the consumer's culpability.

2

her credit rating. In response, Mason called Mark Toelle, an employee of DHI, and advised him of Moreno's credit status. (Moreno Dep. at 113). Based on what she overheard and what Mason told her, Moreno believed that Toelle had approved her application for financing the townhouse purchase and that she could close on the home in two months. As such, Moreno signed a contract to purchase the townhouse from D.R. Horton on January 13, 2007. Upon signing this contract, the parties cancelled the original contract for the Rainswood Lane property. However, the same $20,000.00 deposit appears to have been retained by D.R. Horton for the townhouse contract. On February 26, 2007, DHI pulled Moreno's credit history a second time. (Toelle Dep. Ex. 1). In March 2007, DHI verbally advised Moreno that it was rejecting her credit application and that it would not finance the purchase of the townhouse. D.R. Horton then refused to close on the sale of the townhouse or to refund Moreno her $20,000.00 deposit.

During this time period, Moreno had engaged in several other real estate purchases, which led to the deterioration of her credit. In March 2006, while the Rainswood property was being constructed, Moreno purchased another property in Arlington ("Arlington property") for her ex-husband, who could not obtain financing himself because he was an illegal alien. Moreno made some misrepresentations in conjunction with that loan application, including that it would be her primary residence. Moreno's ex-husband was to make the mortgage payments, but when he stopped

3

making them, Moreno failed to make them in his stead. As a result, the home was foreclosed on and Moreno became liable for unpaid condominium fees on the property. Moreno later applied for a loan to purchase property on Banks Court ("Banks Court property"), but discovered that her credit had deteriorated. She nevertheless purchased the Banks Court property through a straw man in order to get a better interest rate. The Banks Court property was her primary residence in January 2007.

On August 21, 2007, DHI sent Moreno a "Statement of Credit Denial, Termination, or Change" regarding her pending loan application. The Statement described the action taken as "approved, not accepted" and the reason for the action as "applicant chose not to purchase property." (Def.'s Resp. Br. On Damages, Ex. J). Attached to the Statement was a letter from Michael Reda at DHI, indicating that Moreno had withdrawn her application, and a letter from Heatherann McCreary, a DHI loan processor, informing Moreno that she owed no expenses for the processing of her loan. DHI has never sent any other letter, notification, or statement to Moreno.

## II. DISCUSSION

Under the FCRA, 15 U.S.C. § 1681m(a), a business taking an adverse action against a consumer must provide notice to that consumer that includes (1) the name, address, and telephone number of the agency that furnished the credit report; (2) a statement that such agency did not make the decision to take the adverse

4

action and therefore cannot provide the consumer with the reasons such action was taken; and (3) notice of the consumer's right to obtain a free credit report from the agency and to dispute the accuracy of any information on the report. See also Barnette v. Brook Road, Inc., 429 F.Supp.2d 647, 656-57 (E.D.Va. 2006). DHI failed to provide Moreno with this notice after it had denied her credit for the purchase of the townhouse.

Under the ECOA, a creditor must, within thirty days of receipt of a completed application for credit, notify an applicant of the action that it intends to take. 15 U.S.C. § 1691(d)(1). If that action is an "adverse action," which includes denial of credit, then the creditor must provide a written statement of the specific reasons for that adverse action or written notification of (1) the applicant's right to disclosure of the reasons and (2) the identity of the person or office from which those reasons can be obtained. 15 U.S.C. § 1691(d)(2).

**A. Damages Under the Fair Credit Reporting Act**

To assess damages under the FCRA, the Court must first determine whether the violation was willful. If it was not, the plaintiff is only entitled to actual damages. 15 U.S.C. § 1681o. If the violation was willful, the plaintiff is entitled to the greater of her actual damages or the statutory damages, which are capped at $1,000.00, and such punitive damages as the court finds are warranted by the facts. 15 U.S.C. § 1681n.

Under the FCRA, an act of reckless disregard amounts to

5

willfulness. Safeco Insurance Co. Of America v. Burr, 551 U.S. 47, 127 S.Ct. 2201 (2007). The United States Supreme Court describes an act of reckless disregard under the FCRA as "not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 69. DHI did not just fail to provide Moreno with sufficient notice that it was denying credit; it failed to provide any written notice at all. The record indicates that although DHI had a system for ensuring that FCRA notices went out to applicants who filled out paperwork, it had no system for providing the notice to applicants who applied orally or over the telephone, as had Moreno. DHI, relying on inapposite case law,[3] argues that neither a single violation of the statute nor a lack of any policy to ensure compliance constitutes willfulness. The Court disagrees. It is apparent that Moreno was considered a credit applicant, in part because this is the only justification DHI had to pull her credit report in February 2007. Moreover,

---

[3] DHI cites Dalton v. Capital Associated Industries, Inc., 257 F.3d 409 (4th Cir. 2001), a case in which a credit reporting agency reported false information to a potential employer. Nothing in that case stands for the proposition, as defendant would have it, that "[a] finding of willfulness is not supported where the violation is a single incident," but rather that was one factor the Dalton court considered. (Def.'s Trial Brief, 18). Nor does the opinion indicate that having *no* procedures in place to ensure compliance does not rise to willfulness, but simply found that the credit agency, in having no procedures in place to advise subvendor researchers how to comply, was negligent.

internal communications regarding Moreno specifically indicate that DHI considered her an applicant. (See Toelle Dep. Ex. 5 (email communication in which Micheal Reda of DHI states that Moreno "made application and was approved" and in which both parties refer to Moreno as an "applicant")). DHI's failure to send any FCRA notice to Moreno because she applied orally indicates a systemic practice that violates the FCRA.

The Court must next consider what damages to assess. Although DHI continues to argue that it did not violate either the FCRA or the ECOA, that issue was resolved on October 5, 2009 and will not be reconsidered. Moreover, DHI's arguments related to its reasons for denying credit to Moreno are irrelevant to the damages issue.

Moreno admits that she suffered no pecuniary damages, but she alleges that she suffered "intangible" damages. However, she failed to provide any evidence of these intangible damages. On this record, the Court finds that Moreno suffered no actual damages.

For a willful violation of the FCRA, an award of the greater of either the actual or the statutory damages is appropriate. Statutory damages range from $100.00 to $1,000.00. 15 U.S.C. §1681n(a). There is little guidance in the statute or the case law as to what factors should be considered in assessing statutory damages under the FCRA. The FCRA violation in this case clearly occurred because DHI does not send notices to applicants who make oral applications without submitting any paper application or

7

documentation. DHI's violation was not a *de minimis* violation, such as sending the notice late or with typographical errors conveying incorrect information. DHI took Moreno's application for credit over the phone and "began the process." Therefore, it should have been aware that an FCRA notice would be necessary. On this basis, an appropriate award of statutory damages should not be as low as an award for a *de minimis* violation. Accordingly, the Court finds that a statutory damage assessment of $750.00 is appropriate.

Lastly, the Court must determine what punitive damages, if any, are appropriate. Three factors should be considered in assessing punitive damages: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages... and the civil penalties authorized or imposed in comparable cases." Saunders v. BB&T, 526 F.3d 142, 152 (4th Cir. 2008)(citing State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418 (2003)).

In determining the degree of reprehensibility, courts consider whether: "(1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the

harm was the result of intentional malice, trickery, or deceit, or mere accident." Id.

Moreno admits that neither of the first two factors are present in this case. As to the third factor, whether the consumer was financially vulnerable, the facts here cut both ways. Although Moreno was clearly facing financial trouble, as she had invested all of her savings in various properties and her credit had deteriorated substantially, she was not an unsophisticated consumer. Moreno had invested in numerous properties, applied for several home loans, and even completed a property transaction through a straw man. Despite her poor language skills, Moreno's financial problems were due to her frequent misstatements on other credit applications in which she falsely represented material facts on several loan documents. These loans ultimately put her in serious financial trouble. As to whether DHI's conduct was isolated or repeated, there is little evidence for either conclusion. Although DHI appears to have no standard procedures for sending FCRA notices to applicants who apply for credit orally, there is no evidence of any other complaints by either Moreno or other consumers. Lastly, there is not enough evidence before the Court to determine that the harm was the result of malice, trickery or deceit. Moreno's theory of the case presumes that DHI and its parent company, D.R. Horton, were in collusion to acquire the plaintiff's initial down payment, but there is simply no evidence to support such a finding. Putting all these factors

together, the degree of reprehensibility is so low that punitive damages are not appropriate in this case.

B. Damages Under the Equal Credit Opportunity Act

The ECOA provides that an applicant who was a victim of an ECOA violation receive actual damages and that the creditor who violates the statute "shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $10,000, in addition to any actual damages." 15 U.S.C. §§ 1691e(a) and (b). For the reasons in the discussion above, there is no evidence in this record that Moreno suffered any actual pecuniary loss as a result of DHI's failure to notify her of the reasons that it denied her credit.

ECOA sets forth five statutory factors to be considered in assessing the punitive damages award: "the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional." 15 U.S.C. § 1691e(b).

Because she suffered no actual damages, Moreno argues that punitive damages must be high to create a deterrent effect that would otherwise be missing in this case. DHI counters that the absence of actual damages counsels for a low punitive damage award because the ratio of punitive damages to actual damages should be

less than one-to-ten.[4] As to the second factor, DHI appears to have rich resources, as its website boasts that its parent company, D.R. Horton, is "the Nation's leading homebuilder" and that DHI has 43 offices nationwide. As to the frequency and persistence of failures of compliance, Moreno correctly points out that DHI still has yet to serve proper notice on her explaining the reasons for denial of her application for credit,[5] so the violation has been persistent as to Moreno. There is no evidence of other applicants for whom DHI has not provided the appropriate ECOA notice. To that end, Moreno appears to be the only person affected by DHI's failure to provide her with the notice. There is likewise no evidence, beyond Moreno's conclusory assertions, that the omission was intentional. Considering the sum of all these factors, the Court finds that $1,000.00, which is a relatively low punitive damage assessment is sufficient to punish and deter DHI's violation of the ECOA.

---

[4] Ordinarily, a punitive damage award cannot exceed an actual damage award by more than a single digit ratio, but not where actual damages are small. Saunders v. Branch Banking and Trust Co., 526 F.3d 142, 154 (4th Cir. 2008)(citing State Farm, 538 U.S. at 425).

[5] DHI insists that it did provide the plaintiff with notice by its Statement of August 21, 2007, but that letter indicates that the reason for DHI's denial of credit was that the plaintiff's application was withdrawn. This clearly is not the correct reason for the denial of credit. At best, the letter referred to the plaintiff's previous application for credit on the Rainswood Property. Otherwise, this letter gave a completely inaccurate reason for the denial of the plaintiff's second application for credit.

### C. Attorney's Fees

Both the FCRA and the ECOA state that the Court "shall" award the prevailing party its reasonable attorney's fees. However, before the parties expend more resources briefing this issue, they are advised that the Court will consider the plaintiff's degree of success when assessing attorney's fees. See Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002)(holding that "[t]he court should subtract fees for hours spent on unsuccessful claims unrelated to successful ones" and award a percentage of the resulting amount "depending on the degree of success enjoyed by the plaintiff"). The Court will also consider the amount of damage recovery compared with the proposed attorney's fee award. Because the damage recovery in this case is so small, the parties are strongly advised to resolve the issue of attorney's fees on their own.

### III. Conclusion

For the reasons stated above, the Court finds that the plaintiff is entitled to $1,750.00 in statutory damages, consisting of $750.00 on the FCRA count and $1,000.00 on the ECOA count. An appropriate order will issue with this opinion.

Entered this 27th day of August, 2010.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge